UNITED STATES of America

v.

Paul ANDREWS.

Crim. No. B-92.

United States District Court,
D. Connecticut.

Jan. 30, 1974.

Paul Coffey, Sp. Atty., U. S. Justice Dept., Hartford, Conn., for plaintiff.

Jacob D. Zeldes, Elaine S. Amendola, Bridgeport, Conn., for defendant.

## RULINGS ON DEFENDANT'S AMENDED MOTION TO DISMISS AND MOTION TO SUPPRESS

ZAMPANO, District Judge.

In this action the defendant, Paul Andrews, is charged in three counts with committing perjury before a Grand Jury in Hartford, Connecticut, on January 16, 1973, in violation of 18 U.S.C. § 1623. The government alleges that at the time the Grand Jury was conducting an investigation into possible violations of the gambling laws and that the defendant gave false testimony when he: (1) denied he was engaged in a numbers operation in 1972 and 1973 (Count One); (2) stated he never settled up gambling accounts at his home during that period (Count Two); and (3) indicated he did not know that Benjamin Crawford was in the gambling business (Count Three).

### AMENDED MOTION TO DISMISS

The defendant moves, pursuant to Rules 7(c) and 12(b), F.R.Crim.P., to dismiss the indictment on several grounds.

First, he contends that several of his answers were unresponsive and literally true and, therefore, they cannot be used to sustain a charge of perjury under the rationale of Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). In *Bronston,* the Supreme Court determined that the provisions of the federal perjury statute did not encompass a witness' answer which was literally true but unresponsive, even assuming the answer was arguably false by negative implication and was given with the intent to mislead the questioner. See also United States v. Razzaia, Crim. No. B–87 (D.Conn. September 12, 1973). However, the factual circumstances in the instant case are readily distinguishable from those in *Bronston* and *Razzaia.*

■ During the course of the proceedings before the Grand Jury, the following colloquy ensued between the prosecutor and the defendant:

"Q. In November of 1972 were you engaged in bookmaking activities involving a numbers operation?

A. I am not engaged in bookmaking, period. I mop floors for a living.

Q. Is the answer no?

A. No.

Q. In December of 1972?

A. No.

Q. In January of 1973?

A. In January? That's this month.

Q. That's right.

A. No, no." (Tr. 8).

The defendant argues that the technical and grammatical meaning of the answer "no" to the question "Is the answer No?" was: "the answer is *not* no." Thus, in effect, the defendant would be literally telling the truth by inferentially admitting he was engaged in bookmaking activities during the periods in question.

The argument borders on pure sophistry. Though literally correct in form, it is invalid because it ignores the realities of the situation and the context of the dialogue in which the answers were expressed. Prior to the testimony at issue, the defendant categorically denied any bookmaking activities in the seven months preceding November 1972. Unlike the discourse sequence in *Bronston* and *Razzaia,* there was a cadence of responsive "no" answers to short, specific questions concerning the defendant's

bookmaking activities in the months of April, May, June, July, August, September and October, 1972.[1] These specific denials were followed by the answer "I am not engaged in bookmaking, period. I mop floors for a living" to the question concerning the month of November, 1972. At this point, the questioner was understandably prompted to clarify the ambiguous answer to the question referring to the month of November, 1972. He did this by stating "Is the answer no?" in order to obtain a concise, responsive answer from the defendant. When the defendant replied "No", therefore, the plain and obvious connotation was: "No, I was not engaged in bookmaking in November of 1972." Thus, the prosecutor was merely bringing the defendant "back to the mark" in order to flush out a responsive answer to his question. *Bronston,* 409 U.S. at 358, 93 S.Ct. 595.[2]

█ The defendant next asserts that the counts in the indictment which incorporate questions of the prosecutor containing such phrases as "bookmaking operations" and "settling up" should be dismissed because, as a matter of law, these terms are vague and ambiguous. See, e. g., United States v. Lattimore, 127 F.Supp. 405 (D.D.C.), aff'd, 98 U.S. App.D.C. 77, 232 F.2d 334 (1954); United States v. Cobert, 227 F.Supp. 915 (S.D.Cal.1964).

While it is true that these words may have various shades of meaning in different contextual settings, there is no doubt that in this case the defendant and the prosecutor understood one another in all material respects, and that they had a meeting of the minds in their question and answer exchanges before the Grand Jury. A review of the record indicates the defendant was not misled at any time, cf. United States v. Marchisio, 344 F.2d 653, 661 (2 Cir. 1965), and reveals that the defendant was fully acquainted with the jargon of the gambling business (". . . I told her some place she could make money in the number business," Tr. p. 4; "I haven't been busted for no numbers," Tr. p. 5; "1971 I was in the numbers business," Tr. p. 10; ". . . once I bought her the kind of paper that they use in the

---

1. "Q. Now I am asking you very specifically, Mr. Andrews, in April 1972 were you engaged in any way in operating or helping to operate a numbers operation in Norwalk, Connecticut?
A. Was I engaged of helping operate an operation, number operation?
Q. That's right.
A. No.
Q. In May of 1972?
A. You got to go back to '71 to get me.
Q. I'm asking May of 1972?
A. No.
Q. In June of 1972?
A. No.
Q. In July of 1972?
A. No.
Q. In August of 1972?
A. No.
Q. In September of 1972?
A. No.
Q. In October of 1972?
A. No.
Q. In November of 1972?
A. Can I say my piece now?
Q. In November of 1972 were you engaged in bookmaking activities involving a numbers operation?
A. I am not engaged in bookmaking, period. I mop floors for a living.
Q. Is the answer no?
A. No.
Q. In December of 1972?
A. No.
Q. In January of 1973?
A. In January? That's this month.
Q. That's right.
A. No, no."

2. For the same reasons, this Court rejects defendant's attacks on other portions of his Grand Jury testimony to which he replied "No" to the questioner's inquiry "The answer is no?" For example, the prosecutor asked:
"Q. From April, 1972 until December, 1972, have you had occasion at your home on Rockland Road to settle up with people engaged in the numbers operations, that is, with those people who would check with you to determine whether they owed you money or whether you owed them money concerning a numbers operation?
A. No.
Q. The answer is no?
A. No.
Q. Unequivocally?
A. It's no." (Tr. p. 10).

numbers business," Tr. p. 18). Although the defendant at first denied he knew the meaning of the phrase "settling up," Tr. pp. 8, 9, the prosecutor defined the words for him, Tr. p. 10, and the defendant used the phrase himself when he claimed that certain people visited his home as friends but "they didn't come there to settle up for no numbers." Tr. p. 9. The Court is satisfied that as a matter of law, the questions involved here were not fatally vague or ambiguous. Cf. United States v. Ceccerelli, 350 F.Supp. 475, 478 (W.D.Pa.1972).

■ Third, the defendant claims the statements alleged to be perjurious in Count Three were not material to the investigation by the Grand Jury. The question of materiality is one of law for the court, not one of fact for the jury. United States v. Edmondson, 410 F.2d 670, 673 (5 Cir.), cert. denied, 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430 (1969); United States v. Alu, 246 F.2d 29, 32 (2 Cir. 1957). The test to be applied is whether "the false testimony has a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation." Carroll v. United States, 16 F.2d 951, 953 (2 Cir.), cert. denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927).

■ It seems clear to the Court that the questions asked of the defendant concerning Benjamin Crawford's involvement in illegal gambling activities and his association with the defendant in the numbers business were relevant to the Grand Jury's inquiry into possible violations of the syndicated gambling statute, 18 U.S.C. § 1955. It is not necessary that the questions, had they been answered truthfully, contain all or any of the elements of an offense or be sufficient to sustain a criminal prosecution. United States v. Cohn, 452 F.2d 881, 883 (2 Cir.), cert. denied, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1971); Vi-

tello v. United States, 425 F.2d 416, 424 (9 Cir. 1970); United States v. Enoch, 360 F.Supp. 572, 574 (E.D.Pa.1973).

■ Fourth, the defendant argues that the indictment is multiplicitous because it divides into three offenses what is actually one crime. However, the acts of the defendant which resulted in the present prosecution are not his alleged association with a gambling business in 1972 and 1973, but rather his false declarations with respect to three different and material aspects of that suspected criminal enterprise. Each series of questions and answers related to distinct aspects of the investigation and, therefore, provided a proper basis for each separate count. Unlike the situation in Gebhard v. United States, 422 F.2d 281, 289–290 (9 Cir. 1970), the government did not bludgeon the defendant with repetitious questions in order to create multiplicitous perjury counts. Each answer of the defendant in the indictment, if untrue, constitutes a separate lie.

As a fifth claim in support of dismissal, the defendant maintains that the rule established in United States v. Estepa, 471 F.2d 1132 (2 Cir. 1972) was violated when hearsay evidence was presented to the Grand Jury in lieu of primary sources of proof. However, not being privy to the Grand Jury minutes, the defendant admits he has no factual basis for the claim.

In view of the representations made to the Court of Appeals by the United States Attorney's Office for this District in United States v. Messina, 388 F.2d 393, 394 n. 1 (2 Cir. 1968)[3], this Court has adopted the following procedures when confronted with similar motions in other cases:

1. Upon some showing, however slight, that the indictment was returned solely on hearsay evidence, the Court has examined the grand jury minutes *in camera* to ascertain the nature of the

---

3. Counsel for the government advised the Second Circuit that it will be the practice "in the District of Connecticut to present to the grand jury only testimony of witnesses with first-hand knowledge except when such witnesses are unavailable or cannot be summoned without causing them extreme inconvenience."

proof presented to the grand jury. If extensive hearsay was evident, the record was reviewed to determine whether or not the grand jury was misled into believing it was receiving firsthand information when in fact it was not, and whether or not there was some reasonable explanation given for the lack of primary witnesses. Depending on its findings, the Court then applied the tests set forth in *Estepa*.

2. In the absence of some factual basis for the claim that hearsay evidence was improperly before the grand jury, the Court has accepted at face value a statement on the record by the prosecutor that eyewitness testimony supported the indictment and denied the motion to dismiss, with leave to renew the motion at trial if the cross-examination of the witnesses or the Jencks Act material (which includes the testimony of the trial witnesses before the grand jury) reveals the prosecutor's pretrial representation was untrue.

These procedures protect the defendant from the dangers inherent in the improper use of hearsay evidence before the grand jury, avoid the burdensome inspection by the Court of the grand jury minutes in every criminal case before it, and, in the Court's opinion, conform fully with the principles enunciated in *Estepa*. See also United States v. Harrington, 490 F.2d 487 (2 Cir. 1973); United States v. Ramirez, 482 F.2d 807 (2 Cir. 1973).

■ In the instant case, the government's attorney has assured the Court in oral argument and in his brief that no *Estepa* problem exists and, therefore, the Court will not examine the Grand Jury minutes at this pretrial stage of the proceedings. The defendant has leave to renew his *Estepa* motion at the conclusion of the government's case-in-chief at trial.

■ The defendant's sixth contention is that the indictment is fatally defective because it fails to allege, as an essential element of the crimes charged, that the defendant did not admit the falsity of his declarations before the Grand Jury, as required by 18 U.S.C. § 1623(d)[4], a rehabilitation clause which provides a judicial bar to prosecution if raised prior to trial as a defense. United States v. Kahn, 472 F.2d 272, 283 n. 9 (2 Cir. 1973). No defense under this subsection has been advanced by the defendant and, therefore, the argument is frivolous.

■ The defendant's final challenge to the indictment urges the Court to declare 18 U.S.C. § 1623 unconstitutional because it "covers precisely the same ground as 18 U.S.C. § 1621." Since the elements constituting a violation of both statutes are similar but the quantum of proof differs (§ 1621 unlike § 1623 is controlled by the "two-witness" rule), the defendant argues that the prosecutor's decision to proceed under § 1623 is a denial of due process and equal protection. The claim is without merit. Cf. United States v. Ceccerelli, supra, 350 F.Supp. at 477–478. Where criminal statutes overlap, "the government is entitled to choose among them provided it does not discriminate against any class of defendants." United States v. Ruggiero, 472 F.2d 599, 606 (2 Cir. 1973). See also United States v. Kahn, supra, 472 F.2d at 283; United States v. Eisenmann, 396 F.2d 565, 568 (2 Cir. 1968). No class discrimination has been demonstrated here.

Accordingly, the defendant's amended motion to dismiss is denied.

## MOTION TO SUPPRESS

Lastly, the defendant moves to suppress his Grand Jury testimony on the ground that as a "prospective defend-

4. That subsection states:
"Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."

ant" when he was summoned before that body, he should have been warned of his constitutional rights before being questioned by the prosecutor and the jurors. Cf. United States v. Rangel, 365 F.Supp. 155 (W.D.Tex.1973); United States v. Kreps, 349 F.Supp. 1049, 1052–1054 (W.D.Wis.1972).

Although the defendant was twice cautioned about the penalty of perjury, he received no warnings of his right to remain silent or right to the advice of counsel. Since he was a target of investigation by the Grand Jury, the defendant argues he should have been accorded a full and complete recitation of his constitutional rights in order to insure that his testimony was given voluntarily, knowingly and intelligently.

 The question is a troublesome one. The Court perceives no reason for a government attorney to advise "ordinary" witnesses or government agents of their constitutional rights when called to testify before a grand jury, but it is difficult to understand why a prosecutor, in the interests of fairness and to avoid a challenge to the proceedings, would fail to give *Miranda* warnings to a witness in Andrews' position. Cf. United States v. Scully, 225 F.2d 113, 116 (2 Cir. 1955). In the Court's opinion, the full panoply of constitutional rights should be afforded any person who is compelled to appear before a grand jury if by his testimony he will expose himself to highly incriminating admissions.

 However, controlling law compels a denial of the defendant's motion to suppress. Andrews was indicted neither for any crime being investigated by the Grand Jury nor for any offense revealed during the course of his testimony. While the defendant's legal contentions may well have provided a valid defense against an indictment returned against him as a result of incriminating statements made to the Grand Jury in the absence of proper warnings, they do not insulate him from the crime of perjury. Even assuming the defendant was

entitled to *Miranda* warnings as a matter of constitutional right, "omission so as to advise him is no defense to a charge that he thereafter perjured himself in the grand jury room." United States v. Winter, 348 F.2d 204, 208 (2 Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965). See also United States v. Morado, 454 F.2d 167, 173 (5 Cir. 1972); United States v. Di Giovanni, 397 F.2d 409, 412 (7 Cir.), cert. denied, 393 U.S. 924, 89 S.Ct. 256, 21 L.Ed.2d 260 (1968); Cargill v. United States, 381 F.2d 849, 853 (10 Cir. 1967); United States v. Sweig, 316 F. Supp. 1148, 1157 (S.D.N.Y.1970).