**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Russell W. MATTHEWS, Defendant-Appellant.**

**No. 78–1488.**

United States Court of Appeals, Ninth Circuit.

Dec. 21, 1978.

Rehearing and Rehearing En Banc Denied Feb. 1, 1979.

---

ties had been invested in enterprises engaged in interstate commerce. Appellant was questioned about $260,000 in cash that he and one Rasmussen had brought from New York to California. Appellant testified that he had obtained the money carried by him from Rasmussen. The following question and answer form the basis for the charge of perjury:

"Q. Do you know where Mr. Rasmussen got that money?

A. No."

In support of its charge that appellant knowingly and willfully lied, the government presented evidence to the following effect:

In 1973 appellant had been employed by one Madonna and had begun to look for an enterprise in which Madonna could invest between $200,000 and $300,000. Later that year he undertook to obtain capital for a group of promoters which was organizing a corporation for the purpose of manufacturing food processing machinery. In September of that year he arranged for Madonna to come to California and meet with the promoters. Madonna agreed to invest $250,000 for a two-thirds interest in the corporation. Ten days later appellant told one of the promoters he was going to New York to get the money from Madonna. On September 18 he flew to New York with Rasmussen. On September 20 Rasmussen showed appellant a briefcase containing $260,000 in $100 bills. The two returned to California with the money.

Prior to leaving California for New York appellant and Rasmussen inquired of officers of two different banks as to whether large sums of money could be transferred to New Hebrides so that the source of the funds could not be traced when they were later returned to the United States. When the money was brought to California it was deposited in bank accounts in Rasmussen's name, and appellant and Rasmussen then flew to New Hebrides to await its arrival.

Gerald J. Hinckley, Sp. Atty., San Francisco, Cal., for the U. S.

Richard B. Mazer, San Francisco, Cal., for Russell W. Matthews.

Before MERRILL and SNEED, Circuit Judges, and LINDBERG,* District Judge.

MERRILL, Circuit Judge:

Matthews appeals his conviction of willfully and knowingly answering a question falsely before a grand jury in violation of 18 U.S.C. § 1623. He argues that the question was susceptible of two interpretations under one of which his answer was not proved to be false.

The grand jury was investigating whether money derived from racketeering activi-

---

* Honorable William J. Lindberg, Senior United States District Judge of the Eastern District of Washington, sitting by designation.

It was, however, seized in the United States by the Internal Revenue Service.

The government asserts that in the light of all circumstances it must have been clear to appellant that the question in issue sought to ascertain the source of the money. Other portions of appellant's testimony before the grand jury support the government's position.

"Q. Did [Rasmussen] say who he was going to get [the money] from?

A. No * * *.

Q. You don't know whether it was a legitimate source or illegitimate source?

A. No * * *.

Q. From whom did [Rasmussen] propose to arrange the financing?

A. I don't know. The loan was to come from him.

Q. Did he make any reference as to the source?

A. No."

Appellant, on the other hand, contends that the question that he is charged with answering falsely can be construed as an inquiry as to the person from whom Rasmussen physically received the money. Appellant contends that since the question could be construed in this fashion, and since the government has presented no evidence that the question so construed was answered falsely, he must, as matter of law, be acquitted under *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), followed by this court in *United States v. Cook,* 489 F.2d 286 (9th Cir. 1973). We disagree.

In *Bronston* the answer given was perfectly true, but it was unresponsive to the question asked. The testimony was: "Q. Do you have any bank accounts in Swiss banks Mr. Bronston? A. No, sir. Q. Have you ever? A. The company had an account there for about six months in Zurich." Bronston actually had had a Swiss bank

account at one time in the past and the government contended that the unresponsive answer was false by implication. The Supreme Court rejected this, stating:

"[T]he perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry."

409 U.S. at 360, 93 S.Ct. at 601.

This holding, however, is of no assistance here. The answer here was not unresponsive. It was a forthright "no." It was not, as in *Bronston,* a statement of fact the truth of which could be ascertained without reference to the question that elicited it.[1] Here the answer cannot be separated from the question if the truth of the answer is to be determined. If the "no" is to have meaning it must be read to echo and negate the language of the question itself: "I do not know where Mr. Rasmussen got the money." The problem presented here, which was not presented in *Bronston,* is that the question asked of appellant is asserted to be subject to two different meanings.

If language in which a question is couched is plausibly subject to two interpretations, that language contains within it two different questions. Appellant contends, relying upon *United States v. Cook, supra,* that under these circumstances, if the answer is to be proved false it must be proved false as to both questions. He contends that since it was not proved false under the interpretation he advances (i. e., since it has not been proved that he knew who had physically delivered the money to Rasmussen), he has not been proved guilty of perjury.[2]

In *United States v. Cash,* 522 F.2d 1025 (9th Cir. 1975), this court approached the problem from a different angle. There it

---

1. Had appellant wished to "derail the questioner," as in *Bronston,* he should have answered the question, "I do not know who actually handed him the money."

2. This assumes that the interpretation advanced by appellant is a plausible one. As we note later, this is a question upon which we entertain great doubt.

was held that the critical inquiry is as to the meaning attached to the question by the accused. We stated:

"In the instant case the questions asked of the appellant before the grand jury raise this problem: Did appellant understand the word 'seller' in the questions asked of him before the grand jury to mean 'Jack Bishop' (the purported seller) or did he understand the word 'seller' in those questions to mean the individual, unknown to him, who was the actual seller of the Postal Service Bonds? If appellant construed the word 'seller' to mean Jack Bishop, his conviction must be affirmed. If he construed the word 'seller' to mean that individual who was the actual seller of the bonds, then his conviction must be reversed."

522 F.2d at 1028–29. We concluded:

"A careful reading of the record has convinced us beyond any doubt that appellant knew that he was being asked about his knowledge of Jack Bishop when he was being questioned before the grand jury and that the word 'seller' in the questions was understood by him to mean Jack Bishop."

*Id.* at 1029. We held that it was proper under these circumstances to give the issue to the jury. The result is to place on the prosecution the burden of proving beyond a reasonable doubt that the defendant understood the question as did the government and that, so understood, the defendant's answer was false.

In *Cash* we took note of our earlier decision in *United States v. Cook, supra,* in which this court overturned a jury guilty verdict and ruled as matter of law that the government had failed to make out a case of perjury. While a distinction was not expressly drawn, we appeared, in *Cash,* to distinguish *Cook* on the facts. The history of *Cook* casts light on the scope of its holding. The questions there asked of Cook were:

"Q. Do you have any knowledge of law enforcement officers being paid by operators of gambling establishments?

A. No I do not.

Q. You don't have any knowledge of anybody currently on the force who participated in shakedowns?

A. I do not."

The record established that kickbacks to police officers had ceased two years before Cook was questioned. Cook contended that the questions were directed to the present and that so understood his answers were truthful. The government contended that the questions referred to present or past and that, as to the past, the answers were false. The *Cook* panel originally affirmed the conviction, with Judge Ely dissenting. 497 F.2d 753 (1972). After the decision in *Bronston* came down, the court reconsidered its decision and reversed itself. 489 F.2d 286 (1973). Reading the final opinion in the light of Judge Ely's dissent in the original opinion, 497 F.2d at 767, it is clear that the court felt that a grammatical analysis of the questions asked of Cook made impossible any construction other than that advanced by Cook—that the questions referred to the present only. There was not, then, evidence from which the jury could find the defendant guilty beyond a reasonable doubt, and it was proper for this court, as matter of law, to find that the prosecution had failed to meet its burden and that the defendant was entitled to acquittal.

The case before us is a *Cash* case rather than a *Cook* case. Here, as in *Cash,* the government's construction of the question was plausible and a jury issue was presented as to the defendant's understanding of the question. There is ample evidence from which the jury could conclude beyond a reasonable doubt that appellant understood the question asked of him as pursuing the same inquiry into source that was explicitly made the subject of other questions asked in the course of the same interrogation. Indeed, we do not see how the question could rationally be given any other meaning. We conclude that appellant was not entitled to an acquittal as matter of law; that the question of guilt remained one for the jury.

Affirmed.