UNITED STATES of America, Plaintiff,

v.

Michael SPALLIERO, Jr., Defendant.

No. CR 83–909–PAR.

United States District Court,
C.D. California.

Jan. 20, 1984.

Alexander H. Williams, III, U.S. Atty., James L. Waltz, Sp. Atty., U.S. Dept. of Justice, Los Angeles, Cal., for plaintiff.

W. Michael Mayock, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

An indictment filed November 3, 1983, charges defendant Michael Spalliero, Jr. with five counts of perjury before a grand jury under 18 U.S.C. § 1623 and one count of obstructing justice under 18 U.S.C. § 1503.

In November, 1981 the defendant was subpoenaed and appeared before a special grand jury in the Central District of California. At that proceeding, defendant was questioned concerning his relationship with Vito Spillone. Spillone is alleged to be linked to organized crime and to be involved in loansharking. Spillone allegedly made a number of usurious loans from his

business, Angie's Wholesale Groceries in South El Monte.

In the fall of 1981, prior to defendant's grand jury testimony, the FBI sought and obtained judicial orders permitting wiretaps on Spillone's phones at Angie's Wholesale Groceries. The FBI intercepted conversations between defendant and Spillone regarding transactions involving the allegedly usurious loans.

The matter is now before the Court on defendant's motions to dismiss the indictment and to suppress evidence obtained from and as a result of the wiretaps on Spillone's phones at Angie's Wholesale Groceries.

## I. *The Motion to Dismiss the Indictment.*

Defendant makes three attacks on the indictment. First, he urges that the questions in Count I about the term "juice loan" are vague and ambiguous and susceptible to several constructions. Second, defendant argues that his allegedly false statements as set forth in Counts II through V are in fact literally true and consistent with the "truth paragraphs" in each count because of a grammatical (and logical) rule that a negative answer to a question containing a negative adverb is equivalent to an affirmative response to the same question rephrased without the negative adverb. Finally, defendant contends that 18 U.S.C. § 1503, the statute making it unlawful to obstruct justice, does not encompass the acts alleged in Count VI of the indictment: giving intentionally evasive, false and misleading testimony to the grand jury.

Decisions of the United States Supreme Court and the Ninth Circuit provide some guidance in assessing defendant's claims about the insufficiency of the indictment's perjury counts. Because defendant's motion to dismiss raises difficult issues, a brief discussion of these cases is warranted.

In *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the United States Supreme Court held that a non-responsive but truthful answer to an examiner's question cannot support a perjury conviction even if the unambiguous answer conveys false implications or misleads the examiner. The Court reaffirmed the basic principle that a perjury conviction cannot be based on a literally true answer. The Court placed the burden squarely on the questioner to use the tools of effective cross-examination to pin an evasive witness down to the specific object of the questioner's inquiry. Although the questioning in *Bronston* took place at a debtor's examination in a bankruptcy proceeding, the Court's reasoning applies with equal, if not greater, force to an examination before a grand jury where the witness is not represented by counsel at the examination and may not even be apprised of the nature or target of the grand jury's investigation. Although the *Bronston* Court recognized that a non-responsive answer may be calculated to evade the questioner's inquiry, the Court concluded that "any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution." 409 U.S. at 362, 93 S.Ct. at 602.

In *United States v. Cook*, 489 F.2d 286 (9th Cir.1973), the Ninth Circuit had occasion to reconsider its own decision in light of the Supreme Court's opinion in *Bronston*. Initially, the Ninth Circuit affirmed defendant Cook's perjury conviction over a vigorous dissent that prefigured the reasoning in the *Bronston* decision. *See, United States v. Cook*, 497 F.2d 753 (9th Cir.1972) (original opinion in *Cook* published after the subsequent decision to reverse Cook's conviction because of the persuasive and instructive value of Judge Ely's dissent). In *Cook*, the examiner asked an ambiguous question. The clear grammatical construction of the government's question called for the witness' knowledge of current, not past, events. However, the government urged that the question inquired into the witness' present knowledge of past events. The defendant's clear and unequivocal answer to the question proper-

ly understood in its natural and grammatically correct sense was truthful. In reversing the conviction, the Ninth Circuit adopted Judge Ely's analysis that the only proper interpretation was the grammatically correct one and that there was no evidence that the defendant understood the question in a manner inconsistent with proper English usage.

The *Cook* decision was followed by *United States v. Cash*, 522 F.2d 1025 (9th Cir. 1975) where the Ninth Circuit confronted a slightly different question than the one presented in *Cook*. In *Cash*, the defendant contended that the government's question was ambiguous and that, under his construction of the question, his response was literally true. The court reviewed the entire record and concluded that there was no reasonable doubt that the defendant understood the government's question as the examiner intended it to be understood. In *United States v. Matthews*, 589 F.2d 442 (9th Cir.1978), *cert. denied* 440 U.S. 972, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979), the court followed *Cash* and held that where an examiner's question was plausibly susceptible of two constructions, the jury should decide what was the defendant's understanding of the meaning of the question asked by the government. The *Matthews* court concluded that the government bears the burden of establishing beyond a reasonable doubt that the defendant understood the question asked of him as the government intended the question to be understood. In *Matthews*, the court indicated that the meaning of the government's question could be directly ascertained from the context of the several questions asked the defendant.

Recently in *United States v. Cowley*, 720 F.2d 1037 (9th Cir.1983), the court reaffirmed the *Cook, Cash* and *Matthews* decisions. In *Cowley* (as in *Cash* and *Matthews*) the question was ambiguous and could be understood in more than one way. However, as in *Cook*, the record in *Cowley* showed that the jury could not find beyond a reasonable doubt that the defendant understood the question in the way the government intended. Because the government's "ill phrased" question elicit-

ed a literally truthful response, the court found that there was "no stark contrast between the allegedly perjurious statement and the truth allegations" in the indictment and overturned a perjury conviction.

A. *Count I.*

Count I of the indictment charges defendant with committing perjury by giving the following answers to the examiner's questions:

*Question:* Do you know what "juice" is?

*Answer:* A who?

*Question:* Juice. Have you ever heard the expression "juice"?

*Answer:* I don't know what you mean by "juice" now. What kind of juice are you talking about?

*Question:* Have you ever heard the term "juice" in reference to a loan? Do you know what a juice loan is?

*Answer:* No. [Page 3, ¶ 4 of the indictment.]

The truth paragraph alleges that defendant knew "the meaning of a 'juice' loan, that is a loan with a usurious interest rate with the term 'juice' referring to interest, and has heard and used said term in reference to a loan." [Page 3, ¶ 4.]

■ Defendant argues that the term "juice loan" and "juice" are ambiguous and could mean a variety of things, including a loan for orange juice or a loan taken out by the major depositor of a bank who has lots of juice, meaning power, with the bank. Defendant, in his grand jury testimony, apparently did not offer a meaning of the term "juice loan"; instead, he stated that he did not know the meaning of the term. To the extent that the examiner's questions about "juice" are ambiguous or susceptible to two constructions, plaintiff is entitled to raise the issue of ambiguity at trial. *United States v. Cash*, 522 F.2d 1025 (9th Cir. 1975); *United States v. Matthews*, 589 F.2d 442 (9th Cir.1978). Certainly, on the basis of the indictment alone, I cannot conclude

that the trier of fact[1] could not find beyond a reasonable doubt that defendant understood the question as intended by the government examiner to refer to loans with usurious rates of interest. *Cf. United States v. Cowley*, 720 F.2d 1037, 1043 (9th Cir.1983) (phrased question has sufficient ambiguity to require overturning conviction).

Defendant argues that Count I is improper because it is impossible to tell whether the defendant's ultimate answer "No" is to the question "Have you ever heard the term 'juice' in reference to a loan?" At the same time, defendant argues that the examiner abandoned his first question, and therefore his answer "No" is a response to the second only. As in the case of the ambiguous question, the problem of two questions turns on what the defendant understood the question to be. The issue of which question the plaintiff answered is one for the trier of fact with the government bearing the burden of proof to show which of the two questions (if not both) elicited the allegedly false response.

Defendant's motion to dismiss is denied as to Count I of the indictment.

B. *Count II.*

Paragraph 2 of Count II contains the following allegedly false statements:

*Question:* Did you ever borrow any money from Mr. Spillone for use in gambling?

*Answer:* No.

*Question:* Did you ever ask Mr. Spillone for money that you could use for gambling?

*Answer:* I don't think he will ever give me money to gamble with, that's for sure. You got to be crazy.

*Question:* Have you never asked him for money to use for gambling?

*Answer:* No. [Page 4, ¶ 2.]

Paragraph 3, the truth paragraph, alleges that "the defendant ... well knew and did remember in truth and in fact that he had borrowed money from Mr. Spalliero for use in gambling and had asked Mr. Spillone for money that he could use for gambling."[2] [Page 4, ¶ 3.] [Emphasis added.]

Defendant argues that his answer to the final question asked in paragraph 2 is literally true because responding "no" to a question containing the negative adverb "never" results—logically and grammatically—in affirming the truth of the proposition contained in the question rephrased without the negative adverb. Thus, defendant's answer, read literally, means that he did ask Spillone for money for use for gambling. Defendant argues that he may not be convicted for an answer which is literally true.

Neither the United States Supreme Court's decision in *Bronston v. United States* nor the Ninth Circuit decisions in *Cook, Cash, Matthews* and *Cowley* discuss the "double negative" situation presented here. Unlike *Cash* and *Matthews*, the question in this case is unambiguous and not open to more than one interpretation. Unlike *Bronston* where the answer was non-responsive, defendant Spalliero's answer is responsive but its meaning is equivocal. Moreover, the answer in *Bronston* was "a statement of fact, the truth of which could be ascertained without reference to the question that elicited it." *United States v. Matthews*, 589 F.2d 442 (9th Cir.1979). In this case, the answer "No" must be read in conjunction with the question. Although a literal reading of question and answer renders the answer literally true and consistent with the truth paragraph, the government urges that the popular usage of the response "No" to a question containing a negative adverb does not result in the literally true meaning ascribed by defendant to his answer. Thus, in this case, unlike the cases cited above, the Court is faced with a responsive but ambig-

---

1. The parties have indicated that the case will be tried to the court on stipulation of agreed upon facts.

2. The underlined language "Mr. Spalliero" is a typographical error in the indictment which should read "Mr. Spillone." Counsel have agreed that this error may be corrected simply by retyping the indictment.

uous answer rather than a non-responsive answer (*Bronston* ) or an ambiguous question (*Cash, Matthews* and *Cowley* ).

■ I believe that the principles of *Bronston* and *Cook* should control this case. Although the question here was unambiguous, the answer was obviously ambiguous, just as the answer in *Bronston* was obviously non-responsive. An alert examiner could have asked additional questions to clarify the ambiguity. As with the non-responsive answer in *Bronston,* the ambiguous answer here should signal the government's examiner to pin down the witness so that the meaning of his testimony is clear. The *Bronston* court's rationale for rejecting the argument that a defendant may be guilty of perjury for a truthful non-responsive answer that conveys a false—albeit unspoken—implication is equally applicable to this case. The *Bronston* court explained:

> To hold otherwise would be to inject a new and confusing element into the adversary testimonial system we know. Witnesses would be unsure of the extent of their responsibility for the misunderstandings and inadequacies of examiners, and might well fear having that responsibility tested by a jury under the vague rubric of "intent to mislead" or "perjury by implication."

409 U.S. at 359, 93 S.Ct. at 600.

The witness who gives a responsive but ambiguous answer may find himself the defendant in a perjury case because the examiner failed to follow-up on his initial questions. The law requires the witness to tell the truth; it does not shoulder the witness with the burden of aiding a sloppy questioner.[3] In the *Cook* case, "[a] precise grammatical reading of the challenged question and answer demonstrates that Cook's answer was literally true." 489 F.2d at 287. The *Cook* court did not undertake additional analysis. In this case, a precise grammatical reading of the final question and answer in Count II demonstrates that defendant Spalliero's answer was literally true. As a result, I think that the Court must conclude that a jury could not find beyond a reasonable doubt that the defendant intended his answer to be otherwise.

## C. *Count III.*

Count III suffers from the same defect as Count II. The questions and answers in this count are:

*Question:* Did you ever ask him for additional money besides the $2,700?

*Answer:* Just 50 bucks I got from him.

*Question:* You never asked him for any more money?

*Answer:* No. Just got $2,700. [Page 5, ¶ 2.]

Paragraph 3 of this count contains the truth paragraph which alleges "that the

---

**3.** Adding an additional element to the government's case by requiring it to prove what the defendant meant by his responsive but ambiguous answer may create tremendous confusion and potential prejudice to the defendant. *Cf. Bronston v. United States,* 409 U.S. at 359, 93 S.Ct. at 600 ("A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether 'he does not believe [his answer] to be true.' "). Because the meaning that the defendant ascribed to his ambiguous answer must be shown by circumstantial evidence, it is likely that the government would introduce the same evidence to show both that the defendant intended the "false" construction of his answer and that the answer was in fact false. For example, evidence of a defendant's motive to lie in response to the question would be relevant to both issues of meaning and falsity. Although the meaning of a defendant's answer may be ascertainable from the context of other answers to a specific line of questioning [*see United States v. Andrews,* 370 F.Supp. 365 (D.Conn.1974) ], just as the proper construction of an ambiguous question may be ascertained from the context [*see United States v. Matthews,* 589 F.2d 442, 445 (9th Cir.1979) ], there is no showing that defendant's answers in this case could be elucidated in such a way. Indeed, in Count II, defendant's answer to the second question, "Did you ever ask Mr. Spillone for money that you could use for gambling?" is non-responsive. The initial question in Count II concerning his borrowing money from Mr. Spillone is logically distinct from the question about asking for money. The government did not offer additional excerpts from the grand jury transcript that would help to explain the meaning of defendant's answer "No."

defendant knew well and did remember in truth and in fact that he had asked Vito Spillone for additional monies besides the $2,700 and $50." [Page 5, ¶ 3.]

The final question and answer in this count contain the double negative. Defendant's answer to the first question is non-responsive. The phrase "Just got $2,700" in the final answer does nothing to clarify defendant's answer which could be read "No, [I asked him but] just got $2,700 [from him]."

For the reasons stated in analyzing Count II, I find that the defendant's answer is literally true and that a jury could not find beyond a reasonable doubt that the defendant meant his answer to be otherwise.

D. *Count IV.*

The questions and answers in this count are:

*Question:* Have you ever paid Mr. Spillone any money?

*Answer:* Have I ever paid him any money?

*Question:* That's right.

*Answer:* I still owe him the $50 and the $500 and the $2,700. No, I never paid him any.

*Question:* You have never paid him any money?

*Answer:* No. [Page 6, ¶ 2.]

The truth paragraph in this count states that defendant had paid money to Spillone.

▆ In sharp contrast with Counts II and III, Count IV contains an unambiguous answer "No, I never paid him any" to an unambiguous question, "Have you ever paid Mr. Spillone any money?" Although defendant argues that his answer "No" to the final question of Count IV creates an ambiguity, I do not believe that the ambiguity, if any, renders the count defective. Here the unequivocal answer to the penultimate question helps to explain the meaning of defendant's answer to the final question in the count. Moreover, if the final question and answer were withdrawn, the count would still properly charge defendant

with making a perjurious statement. Finally, at oral argument, defendant suggested that the answer to the final question represents a recantation under 18 U.S.C. § 1623(d). Whether a valid offer to recant has been made is an issue of law. *United States v. D'Auria,* 672 F.2d 1085, 1091 (2d Cir.1982) "An outright retraction and repudiation of his false testimony is essential to a 'recantation' within the meaning of the statute." *Id.* at 1092. "Testimony which serves to cast doubt as to the truth of that which is perjurious is not a recantation." *United States v. Anfield,* 539 F.2d 674, 679 (9th Cir.1976). At least on the record presented on this motion, the Court cannot find evidence that would support a finding that the defendant recanted.

Defendant's motion to dismiss as to Count IV is denied.

E. *Count V.*

Count V consists of the following questions and answers:

*Question:* Did you ever pay Mr. Spillone any interest on money you borrowed from him?

*Answer:* No way, no way.

*Question:* Did you ever tell him you would pay him any interest on money you had borrowed from him?

*Answer:* No. All there was was that business transaction. That's it.

*Question:* Did you ever ask him to let you pay him $250 a week on money that was borrowed from him? I'm asking you did you ever ask Mr. Spillone to let you pay him $250 a week interest on money you borrowed from him?

*Answer:* I got to be crazy to give him $250 a week.

*Question:* Is the answer no, sir?

*Answer:* No.

*Question:* Alright, sir. Have you never borrowed any money from Mr. Spillone where he required that you would pay him with interest; is that correct?

*Answer:* I don't think he would ever charge me interest. I joke around with him a lot.

*Question:* Whether he would in the future, in the past you had borrowed money from Spillone where he required interest on that money; is that correct?

*Answer:* No, no. Nothing. [Pages 7–8, ¶ 2.]

Count V contains the truth allegation that defendant paid Mr. Spillone interest on money he has borrowed from him; that defendant told Mr. Spillone that he would pay interest on money he had borrowed from him; that defendant asked Mr. Spillone to let him pay $250 a week on money that he borrowed from Spillone; and that defendant borrowed money from Mr. Spillone in which there was a requirement that interest be paid to Mr. Spillone.

■ Count V raises the clearest example of the problem of the double negative. The examiner's fourth question, "Is the answer no, sir?" cannot be answered unambiguously with a simple "yes" or "no" response. Defendant's answer to the third question is non-responsive and not helpful in elucidating his answer to the fourth question. The first, second, fifth and sixth questions in Count V ask questions logically distinct from the third and fourth questions.

Accordingly, this case is distinguishable from *United States v. Andrews,* 370 F.Supp. 365 (D.Conn.1974) where the court looked to the defendant's clear and unambiguous answers to a line of questioning on the same subject in order to explain his answer of "No" to one of the questions in the same series. In this case the government has failed to make any showing that defendant's answer could be explained in a similar way.

F. *Strike or Dismiss.*

■ Defendant's motion is styled as a motion to dismiss in contrast to a motion to strike surplusage under Rule 7(d), Federal Rules of Criminal Procedure. A count of perjury that is improperly drawn may be dismissed. *See, United States v. Helstoski,* 635 F.2d 200, 206 (3d Cir.1980). As

indicated above, I find that the defendant's statements set forth in Count III of the indictment are literally true because of the double negative created by defendant's answer and will not support a perjury conviction. Because Count III contains a single instance of perjury the entire count will be dismissed.

Counts II and V present other difficulties. I have found that the second and third questions and answers in Count II [page 4, ¶ 2, lines 13–19] cannot support a perjury conviction because the second answer is non-responsive and the third answer is literally true as a result of the double negative. If these questions and answers are deleted from the count, the first question and first answer of Count II [page 4, ¶ 2, lines 10–12] remain intact:

*"Question:* Did you ever borrow any money from Mr. Spillone for use in gambling?

*Answer:* No."

This question and answer does not suffer from the same defects as did the others in Count II. Language from the truth paragraph (¶ 3 of Count II) must also be withdrawn. The language "and had asked Mr. SPILLONE for money that he could use for gambling" (¶ 3, page 4, lines 24–25) corresponds to the two defective questions of Count II. The remaining language of the truth paragraph corresponds directly to the first question which remains intact.

■ Although courts may not amend indictments as a matter of course, an amendment will be permitted where it withdraws a portion of the charge if the offense remains the same. *See, United States v. Lyman,* 592 F.2d 496 (9th Cir.1978), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2684, 61 L.Ed.2d 300 (1979) (withdrawing 20 of 24 alleged overt acts in conspiracy). In deleting the second and third questions and answers in Count II of the indictment and the corresponding language in the truth paragraph, the essential nature of the charge remains the same, although now more limited in scope. It is difficult to see how defendant is prejudiced by the with-

drawal of the defective language. Accordingly, the second and third questions and answers of Count II (page 4, ¶ 2, lines 13–19) and the corresponding truth paragraph language, from the words "and had asked" to the end of the sentence (page 4, ¶ 3, lines 24–25) are ordered deleted from Count II.

The same analysis can be applied to Count V where I have found that the third and fourth questions and answers (page 7, ¶ 2, lines 17–24) will not support a perjury conviction because the third answer is non-responsive and the fourth answer is literally true. These questions and answers are ordered deleted along with the corresponding language in the truth paragraph "he did ask Mr. Spillone to let him pay $250 a week on money that he borrowed from Spillone" (page 8, ¶ 3, lines 13–14).

 Defendant complains that the counts are duplicitous and therefore violate Rule 8(a), Federal Rules of Criminal Procedure, which governs the joinder of offenses. Defendant contends that the assignment of several allegedly false statements to a single count renders the count defective. After striking the improper questions and answers of Count II and Count V, only Count V of the first five counts contains more than one allegedly false answer. The remaining questions in Count V concern whether defendant ever paid Mr. Spillone interest, whether defendant told Mr. Spillone that he would pay interest, and whether Mr. Spillone ever required plaintiff to pay interest. It appears to be settled in the Ninth Circuit that a single count of an indictment may include several assignments or specifications of false statements. *See Arena v. United States,* 226 F.2d 227, 236 (9th Cir.1955), *cert. denied,* 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956); *Vitello v. United States,* 425 F.2d 416, 418 (9th Cir.1970) (law "well settled" that several specifications of falsity may be included in a single count); *see also: United States v. Isaacs,* 493 F.2d 1124, 1155 (7th Cir.1974) ("In perjury cases ... where one offense is committed, all the false declarations pertaining to that of-

fense can be charged in one count without making that count duplicitous.") None of the counts in the indictment is duplicitous.

### G. *Count VI.*

Count VI of the indictment charges the defendant with obstruction of justice under 18 U.S.C. § 1503. Count VI sets forth a series of questions and answers from defendant's grand jury testimony regarding a loan of $2,700 made to defendant by Mr. Spillone for the purpose of buying a tow truck for defendant. Paragraph 4 of the count charges that defendant's testimony as set forth in Count VI was "intentionally evasive, false and misleading and designed to conceal defendant's true knowledge of the facts from the Grand Jury." In his testimony, defendant declared that he did not give Mr. Spillone a note or I.O.U. Defendant testified that he showed Spillone the vehicle ownership certificate or "pink slip" for the tow truck and left the pink slip on a table at the place where he met with Spillone. Defendant declared that he forgot to pick up the pink slip. Count VI of the indictment charges that defendant intentionally left the pink slip with Spillone to act as collateral for the loan or loans made by Spillone.

Defendant argues that the indictment's charge in Count VI falls outside of the scope of 18 U.S.C. § 1503. Defendant relies primarily on the principle of *ejusden generis* in construing statutes. This principle of statutory construction had been applied by the Ninth Circuit apparently to limit violations of § 1503 to those acts which impede the "due administration of justice" by "threats or force, or by threatening letter or communication." *United States v. Metcalf,* 435 F.2d 754 (9th Cir. 1970). However, the Ninth Circuit has recently moved away from a limited interpretation of § 1503. In *United States v. Rasheed,* 663 F.2d 843 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982), the court concluded that language in earlier cases suggesting a limited interpretation of the statute was dicta. The *Rasheed* court explained that

the earlier decisions failed to address all of the language of the statute. The *Rasheed* court focused on the so-called "omnibus" clause of § 1503. *See, United States v. Brown,* 688 F.2d 596, 597 (9th Cir.1982). In *Rasheed,* the court approved a jury instruction which stated that a defendant could be found guilty of violating § 1503 for corruptly influencing, obstructing or impeding the due administration of justice or endeavoring to do so. *Rasheed* held that a defendant who had concealed documents from a grand jury violated § 1503. In reaching its conclusion, the *Rasheed* court relied on cases that have held that committing perjury [*United States v. Griffin,* 589 F.2d 200 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979)] and giving evasive answers to a grand jury [*United States v. Cohn,* 452 F.2d 881 (2d Cir.1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972)] are within the scope of § 1503.

I hesitate to permit the government to go forward on Count VI for several reasons. First, to the extent that the count charges the defendant with making false statements, I do not understand why the government should not be made to proceed under the perjury statutes and established judicial interpretations of 18 U.S.C. § 1623. Second, to the extent that defendant's testimony is not perjurious but rather evasive, or misleading, I think that interpreting § 1503 to obtain a result unobtainable under the perjury statute is ill-advised. The dangers and problems of prosecuting persons for evasive testimony were discussed by the United States Supreme Court in *Bronston v. United States.* That case did not simply overturn a perjury conviction on the ground that a false implication does not literally fall under the language of the perjury statute which confines an offense to the witness who "wilfully ... states ... any material matter which he does not believe to be true." Instead, the Court looked to limitations dictated by the important policy that "the measures taken against the offense must not be so severe as to discourage witnesses from appearing or testifying." *Bronston v. United States,*

409 U.S. at 359, 93 S.Ct. at 600. Although a conviction under § 1503 may require proof of intention to impede justice thereby excluding the misleading or non-responsive statement, innocently made, the fear of possible prosecution for evasive or misleading testimony under § 1503 will burden every witness before a grand jury—even those who are in no position to gauge the effect of their statements on a grand jury investigation about which they have little or no information.

In *United States v. Cohn,* 452 F.2d 881 (2d Cir.1971), a grand jury witness was charged with violation of § 1503 for testifying repeatedly that he could not recall certain facts. At trial his statements were proved to be false and evasive. By contrast, in this case the government is pursuing a witness who answered the question. If the witness' answers are false then the government could charge perjury. If the answers are incomplete or give a misleading impression, then the government could have remedied the situation at the time of the investigation by asking additional questions to pin down the defendant about whether or not he *intentionally* left the pink slip on the table or intended the pink slip to be collateral for a loan. In the *Cohn* case, the government's questions were met with "I don't recall." Additional questions by the examiner could not remedy the situation.

▇▇▇ Having expressed these reservations, I am nevertheless constrained to acknowledge that the Ninth Circuit appears to embrace the reasoning in *United States v. Griffin* and *United States v. Cohn. See, United States v. Rasheed,* 663 F.2d 843, 852 (9th Cir.1981). Accordingly, defendant's motion to dismiss Count VI of the indictment is denied.

II. *Motion to Suppress.*

Defendant moves to suppress evidence obtained from and as a result of wiretaps placed on the phones of Angie's Wholesale Groceries. The wiretaps were installed pursuant to three judicial orders issued on

May 12, 1981 (Misc. No. 10517), August 6, 1981 (Misc. No. 10752) and September 14, 1981 (Misc. No. 10752). Each order authorized electronic interception of telephone calls made to and from phones at Angie's Wholesale Groceries for a period of thirty days.

Defendant challenges the validity of the government's application for each of the judicial orders. The applications for the orders in this case were made pursuant to 18 U.S.C. § 2516(1) which provides:

The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation....

On January 19, 1981 Attorney General Benjamin R. Civiletti issued Order No. 931–81 designating "Assistant Attorney General in charge of the Criminal Division" to authorize applications for interception of wire or oral communications pursuant to 18 U.S.C. § 2516. On January 20, 1981, with the change of administration, William French Smith became Attorney General. On February 27, 1981, Attorney General Smith issued Order No. 934–81 stating that Order No. 931–81 remains in effect. Order No. 934–81 also corrected a typographical mistake in Order No. 931–81 by deleting from the sixth line on the second page of the order the number "2510(7)" and substituting the number "2518(7)".

In May, 1981 D. Lowell Jensen, Assistant Attorney General Criminal Division, authorized wiretap applications for wiretaps on the phones of Angie's Wholesale Groceries in South El Monte. Applications were also authorized by Assistant Attorney General Jensen in June and September, 1981.

Defendant argues that D. Lowell Jensen, who was not Assistant Attorney General, when Attorney General Civiletti issued Order No. 931–81, was not properly authorized to make the applications on the basis of the earlier order. Thus, defendant argues that Attorney General Civiletti could not have "specifically designated" Assistant Attorney General Jensen as required by the statute.

Defendant's argument has been rejected by the Ninth Circuit in an opinion issued after oral argument on defendant's motion to dismiss. In *United States v. Camp,* 723 F.2d 741 (9th Cir.1984), the court faced exactly the same fact situation presented here involving Attorney General Orders No. 931–81 and 934–81. The *Camp* court upheld the district court's denial of the defendant's motion to suppress evidence and held that the authorizations approved by D. Lowell Jensen after the February 27, 1981 Order No. 934–81 were valid.

Defendant also argues that the recent United States Supreme Court case of *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) must limit the concept of "administrative continuity" which suggests that special designee orders of one administration may carry over into the second administration. *See, United States v. Wyder,* 674 F.2d 224 (4th Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982); *cf. United States v. Robinson,* 698 F.2d 448 (D.C.Cir.1983). Because Attorney General Smith issued his own order of February 27, 1981, the administrative continuity argument need not be addressed.

The Motion to Suppress is denied.

IT IS THEREFORE ORDERED that:

Defendant's Motion to Dismiss is denied as to Counts I, IV and VI;

Defendant's Motion is granted as to Count III. Count III is dismissed in its entirety;

Defendant's Motion is granted in part as to Counts II and V. The following lines of the indictment are ordered deleted:

From Count II: page 4, para. 2, lines 13–19 inclusive; and page 4, para. 3, lines 14–25, beginning with the words "and had asked" to the end of the sentence;

428

From Count V: page 7, para. 2, lines 17–24 inclusive; and page 8, para. 3, lines 13–14, the words "he did ask Mr. Spillone to let him pay $250 a week on money that he borrowed from Spillone."

The government shall prepare a new corrected indictment consistent with this Order.

Defendant's Motion to Suppress is denied.