**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John TOBIAS, Defendant–Appellant.**

**No. 88–1096.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1988.

Decided Dec. 21, 1988.

Stephen G. Corrigan, Asst. U.S. Atty., Appellate Section, San Francisco, Cal., for plaintiff-appellee.

Joseph Morehead, Michael R. Hallinan, San Francisco, Cal., for defendant-appellant.

Before GOODWIN, SNEED and HUG, Circuit Judges.

SNEED, Circuit Judge:

Tobias appeals his perjury conviction, claiming that he recanted his perjurious testimony and that the evidence was insufficient to support his conviction. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

Tobias, a forty-six year old airline cargo handler, was called as a defense witness in *United States v. Fannin* (N.D.Cal. CR 84–531–JPV). Fannin's counsel asked:

> Q: And do you know a person by the name of Conrad Bouchelion?
>
> A: No.

Excerpts of Record (E.R.) at 16. The government cross-examined Mr. Tobias:

> Q: Is it your testimony, Mr. Tobias, that you don't know anybody by the name of Conrad?
>
> . . . .
>
> A: No.
>
> Q: Nobody at all?
>
> A: No.
>
> Q: You never met a man who worked at Pan Am in cargo whose name is Conrad.
>
> A: No.
>
> Q: A Black man named Conrad.
>
> A: No.

E.R. at 20.

Tobias continued his testimony the next day. The government played a cassette tape of a telephone conversation between Tobias and Conrad Bouchelion. His testimony continued:

> Q: Mr. Tobias, having had that opportunity to listen to yourself talking to him on the telephone, does that refresh your recollection concerning whether you know Conrad Bouchelion?
>
> A: I don't know Conrad Bouchelion personally.
>
> The Court: What do you mean by that?
>
> The Witness: I mean I've never had personal contact with Conrad Bouchelion other than through Stephens.
>
> Q: That is your voice on the tape, isn't it, talking to Conrad Bouchelion?
>
> A: I do recall that phone call I received, yes.
>
> Q: And that is your voice.
>
> A: Yes.
>
> . . . .
>
> The Court: Yesterday, Mr. Tobias, you were called and . . . you were asked by counsel for the defense . . . :
>
> "Q: And do you know a person by the name of Conrad Bouchelion? Your answer, 'No.' " Was that answer truthful?
>
> The Witness: That answer is true. I do not know the individual. The way— the way I'm interpreting "knowing" is knowing someone that you have conversation with every day, that you have dinner with, that you spend time with. Knowing. If that guy walked

in this room today, I wouldn't be able to identify him.

. . . .

The Court: Do you know anybody by the name of Conrad?

The Witness: Now I do since talking to Stephens.

. . . .

The Court: So yesterday when you were asked if you knew a man named Conrad, you did know a man named Conrad, didn't you?

The Witness: Knowing that particular name, Judge, but not knowing the individual as a—as a . . . a friend or associate.

The Court: I think the United States ought to look into the prosecution of this man for perjury.

E.R. at 30–33. Fannin's counsel then introduced testimony that Tobias met with customs agents in September of 1984. At that meeting, Tobias admitted that he "knew" a man named Conrad, but claimed that he did not know his last name, nor did he have extensive contact with him. *See* E.R. at 14.

Tobias was indicted for perjury. *See* 18 U.S.C. § 1623 (1982). Defense counsel filed a motion to dismiss the indictment, arguing that Tobias recanted his false testimony. Tobias argues that by admitting the truth of this prior statement, he recanted his earlier testimony. *See id.* § 1623(d). The district court ruled that Tobias did not unequivocally recant his prior testimony. E.R. at 11. At a bench trial, the district court found the defendant guilty. E.R. at 12–13. Tobias was sentenced to three years imprisonment, placed on probation, with special terms and conditions prescribed by the district court. Tobias appealed to this court.

## II.

### JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291.

## III.

### STANDARD OF REVIEW

The first issue before us is whether the trial court properly refused to dismiss the indictment. This is a question of law and is reviewed de novo. *See United States v. Benny,* 786 F.2d 1410, 1414 (9th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *United States v. De-Coito,* 764 F.2d 690, 693 (9th Cir.1985).

■ In his second ground of error, Tobias challenges the sufficiency of the evidence. Citing *United States v. Cowley,* 720 F.2d 1037 (9th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984), he argues that the sufficiency of the evidence supporting his conviction should be reviewed de novo.

In *Cowley* we did state that perjury convictions are reviewed de novo. *Id.* at 1040. In a footnote, however, we qualified this statement by saying: "[t]he standard of review when examining a perjury indictment is *de novo.* . . ." *Id.* at 1040 n. 2. The court in *United States v. Sainz* repeated this broad assertion but applied a standard equivalent to the standard employed in reviewing the sufficiency of evidence to support a conviction.

On appeal, the defendant challenges the sufficiency of the evidence supporting his perjury conviction. . . . In reviewing a perjury conviction we apply a de novo standard. . . . Our central task is to determine "whether a jury could conclude 'beyond a reasonable doubt that the defendants understood the question as did the government and that, so understood, the defendant's answer was false.'" [*Cowley,* 720 F.2d at] 1040 n. 2 (quoting *United States v. Matthews,* 589 F.2d 442 [, 445] (9th Cir.1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979)).

772 F.2d 559, 562 (9th Cir.1985) (citation omitted).

We have traditionally applied a deferential standard, such as was done in *Sainz,* when reviewing the sufficiency of the evidence in a criminal case. In *United States v. Ponticelli,* for example, we stated: "The

evidence and its inferences, of course, must be viewed in a light most favorable to the government...." 622 F.2d 985, 987 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980) (citing *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974)); *accord United States v. Linn,* 862 F.2d 735, 740 No. 87–3093, slip op. at 14684 (9th Cir. Nov. 30, 1988); *United States v. Normandeau,* 800 F.2d 953, 959 (9th Cir.1986); *United States v. Douglass,* 780 F.2d 1472, 1476 (9th Cir.1986); *United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)).[1]

We conclude that in reviewing appellant's sufficiency claim, we apply the deferential standard of review enunciated in *Jackson.*

## IV.

## RECANTATION

Tobias argues that the district court erred in failing to dismiss the indictment against him because he successfully recanted his perjurious testimony. The applicable statute reads as follows:

> Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

18 U.S.C. § 1623(d) (1982).

■■■ While a defendant must raise an affirmative defense or statutory exception, "the prosecution must prove the inapplicability of this [recantation] defense beyond a

reasonable doubt." *United States v. Guess,* 629 F.2d 573, 577 n. 4 (9th Cir.1980); *see United States v. Baker,* 641 F.2d 1311, 1320 (9th Cir.1981). *But see United States v. Moore,* 613 F.2d 1029, 1044 (D.C.Cir. 1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980) (holding that the defendant has the burden of proving that he recanted under § 1623(d)).

■■■ Section 1623(d) requires the defendant to admit making a false declaration. Tobias argues that he implicitly acknowledged that his initial testimony, denying that he knew Conrad Bouchelion, was false. He points to his attempts to explain his understanding of the word "knowing," E.R. at 31, and the introduction into evidence of his earlier statements to customs agents in which he admitted knowing a man named Conrad, E.R. at 37. The government argues that Tobias never admitted, implicitly or otherwise, that his testimony was false. Rather, they suggest that Tobias merely attempted to explain his inconsistent testimony. Judge Patel ruled that § 1623(d) requires that the defendant unequivocally recant his former testimony and therefore Tobias did not satisfy the statute. E.R. at 11.

This court has not addressed this question directly. Other circuits demand more than an implicit admission that the witness' prior testimony was false. The Second Circuit requires that the defendant make "[a]n outright retraction and repudiation of his false testimony." *United States v. D'Auria,* 672 F.2d 1085, 1092 (2d Cir.1982). The First Circuit adopted *D'Auria* in *United States v. Goguen,* 723 F.2d 1012, 1017 (1st Cir.1983), and later held that an implicit recantation does not satisfy the statute, *United States v. Scivola,* 766 F.2d 37, 45 (1st Cir.1985). *See also United States v. Vesich,* 724 F.2d 451, 460 (5th Cir.1984) (holding that the defendant did not recant by claiming memory loss).

In holding that the defendant must explicitly recant his former testimony, the Second Circuit reasoned:

---

1. *Jackson* involved the review of the sufficiency of the evidence in a federal habeas corpus case and therefore does not control this case. However, all of these cases cited *Jackson.*

Otherwise a witness, by suggesting that he might be willing to change his perjurious testimony, could still avoid telling the whole truth by engaging in a skillful discussion with the prosecution aimed at finding out what contrary evidence existed in the government's possession and then tailoring his testimony to it rather than give his truthful recollection of the facts.

*D'Auria,* 672 F.2d at 1092.

We find *D'Auria* persuasive and conclude that a defendant must unequivocally repudiate his prior testimony to satisfy § 1623(d). The government established beyond a reasonable doubt that Tobias did not so recant. At best, Tobias merely attempted to explain his inconsistent statements by using a contorted definition of the word "knowing." Despite repeated questioning, he never admitted that he knew Bouchelion. The introduction of his prior statements to customs agents hardly qualifies as a recantation. This statement was simply additional evidence of Tobias' perjury. Because we find that Tobias did not recant, we need not reach the issue of whether a defendant must recant before the falsity of his testimony is exposed.

## V.

## SUFFICIENCY OF THE EVIDENCE

■ Tobias also challenges the sufficiency of the evidence to support his conviction for perjury. That is, Tobias now argues he had nothing to recant. Judge Patel found that the government's questions were unambiguous and the falsity of Tobias' negative answers was clear from the government's evidence of the taped telephone conversation between Bouchelion and Tobias and the telephone records indicating seventy-four telephone calls from Tobias' home phone to Bouchelion's home telephone. E.R. at 13.

Tobias, citing Judge Ely's dissenting opinion in *United States v. Cook,* 497 F.2d 753 (9th Cir.1972) (Ely, J., dissenting) (majority opinion withdrawn as described in 489 F.2d 286 (9th Cir.1973)), argues that whether someone "knows" someone else is inherently ambiguous, as evidenced by Tobias attempts to explain his understanding of the word. In *Cook* the defendant testified that he did not have "any knowledge" of any bribes being paid to police officers. Judge Ely reasoned that the word "knowledge" was vague and that

it [was not] proper to indict and prosecute an individual for perjury when the questions forming the basis of the charge are so vaguely and inarticulately phrased *by the interrogator* as to require the jury to probe the inner workings of the accused's mind to seek to ascertain which of several plausible meanings he attributed to the ambiguous inquiries....

*Id.* at 764 (emphasis in original).

Whether someone knows another individual admittedly can be interpreted in different ways. However, a rational trier of fact could find that in this context Tobias' testimony was false. His strained definition of "knowing" was only an unsuccessful effort to explain his contradictory answers. Judge Patel's conclusion is also supported by the evidence of the seventy-four telephone calls between Tobias and Bouchelion.

Tobias also cites *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed. 2d 568 (1973), and *United States v. Martellano,* 675 F.2d 940 (7th Cir.1982), for support. In both of these cases the defendants' answers were literally true. As a result, both courts held the defendants could not be convicted of perjury. *See Bronston,* 409 U.S. at 361–62, 93 S.Ct. at 601–02; *Martellano,* 675 F.2d at 941–42. Judge Patel could reasonably find that Tobias' answers were not literally true; even assuming a narrow understanding of the word "knowing," Tobias lied when he testified he did not know Bouchelion.

A rational trier of fact could conclude beyond a reasonable doubt that Tobias knew Bouchelion and that his testimony denying this was false.

The judgment of the district court is AFFIRMED.